IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CECIL KENTON CAROLUS, TRUSTEE OF THE BERTHA A CAROLUS REVOCABLE LIVING TRUST AND HEIRS OF BERTHA CAROLUS; | § § § § § | |
| *Plaintiff,* | § § | SA-22-CV-01234-XR |
| vs. | § § | |
| LAKEVIEW LOAN SERVICING, LLC, | § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Defendant's Motion for Default Judgment and Summary Judgment [#28], which was referred to the undersigned for a report and recommendation on January 18, 2024. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion for default judgment on its Counterclaim and its motion for summary judgment on the claims asserted in Plaintiff's Amended Complaint be granted.

## I.  Background

Plaintiff Cecil Kenton Carolus originally filed this action in state court against James B. Nutter & Company in October 2022 as Trustee of the Bertha Carolus Revocable Living Trust and as Heir of Bertha A. Carolus. The Original Petition alleged wrongful foreclosure of property located at 4900 Timber Trace, San Antonio, Texas, 78250. James B. Nutter removed the case to

this Court based on diversity jurisdiction on November 11, 2022.  After removal, Plaintiff filed

an Amended Complaint, which remains Plaintiff's live pleading.

The Amended Complaint alleges that Bertha A. Carolus purchased the property at issue

on May 22, 2021, and the purchase was financed by Defendant James B. Nutter and secured by a

deed of trust.  (Am. Compl. [#18], at ¶ 5.)  Plaintiff further alleges that the following year, on

October 31, 2002, Ms. Carolus created a trust entitled the Bertha A. Carolus Revocable Living

Trust ("the Trust") and transferred the property to the Trustee (then Jane A. Shive) by Quitclaim

Deed filed on November 18, 2002.  (*Id.* at ¶¶ 6–7.)  According to the Amended Complaint, Ms.

Carolus refinanced the original loan in July 2003, and the Deed of Trust executed as part of the

refinance lists Ms. Carolus as deeding the property to a Trustee to secure the loan.  (*Id.* at ¶ 8.)

However, Plaintiff alleges that the property was not owned by Ms. Carolus at that time but by the

Trust.  (*Id.*)  Ms. Carolus died on February 28, 2018, and no probate proceedings were opened

because all her property had allegedly been transferred to the Trust.  (*Id.*)  Plaintiff alleges that

he became the Trustee of the Trust on the date of Ms. Carolus's death.  (*Id.* at ¶ 9.)

Based on these allegations, Plaintiff asserts two causes of action.  First, Plaintiff alleges

that Defendant refinanced the prior note and Deed of Trust in July 2003 without first determining

the status of the ownership of the property, which resulted in the creation of an erroneous Deed

of Trust in the name of Ms. Carolus as opposed to the Trust.  (*Id.* at ¶¶ 10–12.)  Plaintiff asserts

that the Deed of Trust is therefore a cloud on the title of the property owned by the Trust.  (*Id.*)

Plaintiff also seeks a declaratory judgment that the Deed of Trust is not valid and enforceable

against the Property because the grantor is not the true owner of the property, and the true owner

was not a party to the Deed.  (*Id.* at ¶¶ 13–15.)

James B. Nutter filed a Counterclaim on February 6, 2023, asserting six causes of action against Plaintiff.  (Counterclaim [#19], at ¶¶ 28–42.)  The Counterclaim asserts that the 2003 Loan is in default and claims that James B. Nutter has an enforceable interest in the Property as the beneficiary of the 2003 Deed of Trust.  By its Counterclaim, James B. Nutter seeks a judgment quieting title in its favor and declaring the 2003 Deed of Trust is a valid and existing lien encumbering the Property or, in the alternative, finding that it holds a valid and enforceable equitable first lien on the Property by contractual or equitable subrogation.  (*Id.* at ¶ 45.)  James B. Nutter also seeks a judgment that it is authorized to enforce the terms of the 2003 Deed of Trust through non-judicial foreclosure due to default on the 2003 Loan.  (*Id.*)

After filing the Counterclaim, James B. Butter notified the Court that it had transferred its interest in the lien and property at issue to Lakeview Loan Servicing ("Lakeview"), and the District Court substituted Lakeview as Defendant on August 4, 2023.  (Order [#25].)  Several days later, Lakeview moved for a Clerk's Entry of Default due to Plaintiff's failure to answer or otherwise defend against the Counterclaim.  The Clerk entered default on August 21, 2023. (Clerk's Entry of Default [#27].)  Lakeview filed the Motion for Default and Summary Judgment currently before the Court on September 13, 2023, seeking default judgment on all six claims asserted in its Counterclaim and summary judgment on Plaintiff's claims asserted in the Amended Complaint.  The motion was referred to the undersigned for a report and recommendation on January 18, 2024.

To date, Plaintiff has not filed a response in opposition to the motion and still has not filed a responsive pleading to the Counterclaim.  In fact, Plaintiff has not filed any document or taken any action in this case since he filed the Amended Complaint on January 23, 2023, and

appeared before the District Court at a status conference on January 31, 2023.  More than a year has elapsed since that time.

## II. Jurisdiction and Venue

This Court has diversity jurisdiction over Plaintiff's claims and Lakeview's counterclaims pursuant to 28 U.S.C. § 1332(a) because this case involves a controversy exceeding the sum or value of $75,000, and there was complete diversity of citizenship among the parties at the time of commencement of the action and at the time of removal to federal court. *See also Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970) ("[D]iversity jurisdiction is determined as of the commencement of the action. . . .  Once attached it continues to final disposition of all matters properly before the court, regardless of changes in citizenship of parties, or changes in parties brought about by intervention or substitution.").  Plaintiff is an individual and resident of Bexar County, Texas.  (Am. Compl. [#18], at ¶ 1.)  The original Defendant, James B. Nutter & Company, is a Missouri corporation with a principal place of business in Kansas City, Missouri.  (Notice of Removal [#1], at ¶ 2.)  (Though not determinative of jurisdiction, Lakeview Loan Servicing, LLC, is also a diverse Defendant—a Florida limited liability company, whose sole member is Bayview MSR, a Delaware corporation with its principal place of business in Florida.  (Advisory [#24], at 1.))  Therefore, Plaintiff is a citizen of Texas, and James B. Nutter is a citizen of Missouri for purposes of diversity jurisdiction, and there is complete diversity among the parties.  Venue is proper in this district because the real property which is the subject of this litigation is located in Bexar County, Texas.  (Am. Compl. [#18], at ¶ 3; Counterclaim [#19], at ¶ 14.)

### III.  Motion for Default Judgment on Counterclaim

Lakeview moves for default judgment on the causes of action asserted in its Counterclaim due to Plaintiff's failure to respond to or defend against any of the claims.  The District Court should grant the motion.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion by the plaintiff.  *See* Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint (except regarding damages) but must determine whether those facts state a claim upon which relief may be granted.  *See Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (stating that a defaulting party is deemed to have admitted all well-pleaded allegations of the complaint); *United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).  Thus, for a plaintiff to obtain a default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered."  *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

Where the procedural requirements for default judgment are met, courts then consider six factors in determining whether default judgment is appropriate, including: (1) whether material facts are in dispute; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of default judgment; and (6) whether the court would think

itself obliged to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

The record in this case establishes that Plaintiff failed to plead or otherwise defend against Lakeview's Counterclaim. The undersigned therefore finds that the Clerk properly entered default against Plaintiff. The undersigned further finds that Lakeview is entitled to default judgment because the following well-pleaded facts alleged in the Counterclaim are deemed as true and admitted and state claims upon which relief can be granted. *See Matter of Dierschke*, 975 F.2d at 185. Additionally, Lakeview has provided the Court with copies of the relevant documents at issue, which also establish it is entitled to judgment.

**A.      Facts Alleged in Lakeview's Counterclaim**

For purposes of Lakeview's motion, the Court construes the following well-pleaded facts alleged in Lakeview's Counterclaim as true and as deemed admitted by Plaintiff. On or about October 13, 1999, Martha Mora transferred title to the real property located at 4900 Timber Trace Drive, San Antonio, Texas, 78250, to Ms. Carolus by virtue of a general warranty deed ("Vesting Deed"). (Counterclaim [#19], at ¶ 15.) The Vesting Deed was recorded on October 15, 1999 as Instrument No. 99-0195188 in the real property records of Bexar County, Texas. (*Id.*) As a part of that same transaction, Ms. Carolus executed a deed of trust ("1999 Deed of Trust") that secured a loan in the amount of $70,961.00 ("1999 Loan") against the Property. (*Id.* at ¶ 16.) The 1999 Deed of Trust was recorded on October 15, 1999, as Instrument No. 99-0195189 in the real property records of Bexar County, Texas. (*Id.*) Union Planters Bank, N.A. was the lender and beneficiary under the 1999 Deed of Trust. (*Id.*)

In 2001, Ms. Carolus refinanced the 1999 Loan. (*Id.* at ¶ 17.) As a part of the refinance, Ms. Carolus executed a deed of trust ("2001 Deed of Trust") that secured a loan in the amount of

$70,056.00 ("2001 Loan") against the Property. (*Id.*) The 2001 DOT was recorded on May 30, 2001, as Instrument No. 2001-0089405 in the real property records of Bexar County, Texas. (*Id.*) James B. Nutter was the lender and beneficiary under the 2001 DOT. (*Id.*)

Within the 2001 Deed of Trust, Ms. Carolus expressly acknowledged and agreed that the beneficiary of the 2001 Deed of Trust was subrogated to the rights, powers, and equities of the beneficiary of the 1999 Deed of Trust. (*Id.* at ¶ 18.) Ms. Carolus further acknowledged that the 2001 Loan was given in renewal, extension, and rearrangement of the 1999 Loan. (*Id.*) Of the proceeds from the 2001 Loan, $70,056.00 were used to pay in full the 2001 Loan. (*Id.* at ¶ 19.)

On or about October 31, 2002, Ms. Carolus created the Bertha A. Carolus Revocable Living Trust Agreement ("Trust"). (*Id.* at ¶ 20.) Section 1.03 of the Trust designates Ms. Carolus as Trustee and lists Ms. Carolus as both Trustor and Sole Trustee until her death or incapacity. (Trust [#28-3], at 1–2.) The Trust identified trustees in the following order of succession: (1) Ms. Carolus; (2) Plaintiff; (3) Melanie A. Carolus; and (4) a person chosen by majority vote of the Trust beneficiaries. (Counterclaim [#19], at ¶ 20; Trust [#28-3], at 17.) To the best of Defendant's knowledge, at no point was Jane A. Shive ever appointed as a trustee for the Trust. (Counterclaim [#19], at ¶ 20.)

On or about November 13, 2002, Ms. Carolus transferred the Property to Jane A. Shive, Trustee of the Bertha A. Carolus Revocable Living Trust via a quitclaim deed ("2002 Quitclaim Deed"), despite Jane A. Shive not being a trustee under the terms of the Trust documents. (*Id.* at ¶ 21; Quitclaim Deed [#28-4], at 1–2.) The 2002 Quitclaim Deed was recorded on November 18, 2002, as Instrument No. 20020466560 in the real property records of Bexar County, Texas. (Counterclaim [#19], at ¶ 21.)

In 2003, Ms. Carolus refinanced the 2001 Loan.  (*Id.* at ¶ 22.)  As a part of the refinance, Ms. Carolus executed a deed of trust ("2003 Deed of Trust"), which secured a loan in the amount of $68,918.00 ("2001 Loan") against the Property as evidenced by a promissory note in that same amount ("2003 Note").  (*Id.* at ¶ 22; 2003 Deed of Trust [#28-2], at 6–11.)  The 2003 Deed of Trust was recorded on July 30, 2003, as Instrument No. 20030192102 in the real property records of Bexar County, Texas.  (Counterclaim [#19], at ¶ 22.)  James B. Nutter was the lender and beneficiary under the 2003 Deed of Trust and was granted a security interest in the Property. (*Id.*)  Within the 2003 Deed of Trust, Ms. Carolus expressly acknowledged and agreed that the beneficiary of the 2003 Deed of Trust was subrogated to the rights, powers, and equities of the beneficiary of the 2001 Deed of Trust.  (*Id.* at ¶ 22.)  Ms. Carolus further acknowledged that the 2003 Loan was given in renewal, extension, and rearrangement of the 2001 Loan.  (*Id.*)  Of the proceeds from the 2003 Loan, $68,435.18 were used to pay in full the 2001 Loan.  (*Id.* at ¶ 24.)

At the time of the 2003 Loan, Ms. Carolus executed an affidavit stating:

> That she is the owner in fee simple of the land and all the improvements situated thereon. That there are no outstanding agreements, contracts or instruments entered into by herself with any other persons which would affect the title to the [Property] and which are not of record.

(*Id.* at ¶ 25.)  Since origination of the 2003 Loan, James B. Nutter (as Lakeview's predecessor in interest) has advanced funds for the payment of ad valorem property taxes in order to protect its interests in the Property.  (*Id.* at ¶ 26; Property Tax Records [#28-7], at 1–2.)  The 2003 Loan is in default for failing to make payments as agreed.  (Counterclaim [#19], at ¶ 26.)  Notice of default was provided to the Estate of Ms. Carolus on or about August 17, 2021, demanding payment of all amounts that are past due.  (*Id.*; Default Notice [#28-2], at 19–20.)

**B.      Analysis**

Lakeview is entitled to default judgment on its claims to quiet title and for declaratory judgment, writ of possession, and foreclosure contained in its Counterclaim.  The Court should therefore enter a judgment affirming the validity of Lakeview's security interest in the Property and allowing foreclosure of the Property.

**i.      Quiet Title**

Lakeview seeks to equitably quiet title in the Property by removing any and all clouds on its lien by virtue of any claims made by Plaintiff and seeks a judgment declaring the Property is subject to the 2003 Deed of Trust.  Lakeview is entitled to quiet title against Plaintiff.

A suit to quiet title is an equitable action in which the plaintiff seeks to remove from his title a cloud created by an allegedly invalid claim.  *Florey v. Estate of McConnell*, 212 S.W.3d 439, 448 (Tex. App.—Austin 2006, pet. denied).  A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof.  *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied).  "In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief."  *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title."  *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

To state a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011

WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n. 2 (Tex. App.—Texarkana 1991, writ denied)).

The facts deemed admitted establish that Lakeview has a valid lien on the Property; Plaintiff has filed this suit to quiet title and declare Lakeview's interest invalid and unenforceable; and Plaintiff's claim is without legal merit.  Ms. Carolus signed a Deed of Trust in 2001 and granted James B. Nutter (Lakeview's predecessor in interest) a security interest in the Property in 2001.  (Counterclaim [#19], at ¶ 17.)  Ms. Carolus established the Trust in October 2002, and the Trust established Ms. Carolus as both trustor and trustee until her death and incapacity.  (*Id.* at ¶ 20.)  Ms. Carolus purported to transfer her interest in the Property by Quitclaim Deed to Jane A. Shive as Trustee of the Trust in November 2002, but Ms. Shive was never named as Trustee.  (*Id.* at ¶ 21.)  In 2003, Ms. Carolus refinanced the 2001 Loan and executed a Deed of Trust granting Lakeview (via its predecessor in interest) a security interest in the Property.  (*Id.* at ¶ 22.)

The theory underlying Plaintiff's claim is that Ms. Carolus did not own the Property at the time of the granting of the 2003 security interest—the Trust did—so Lakeview's security interest is invalid.  The facts as deemed admitted establish that Plaintiff's theory is without merit. First, the Quitclaim Deed Ms. Carolus purported to execute to transfer the Property to Jane A. Shive as trustee did not have legal effect, as Ms. Shive was not a designated trustee under the terms of the Trust.  (*Id.* at ¶ 21.)  Moreover, even if the Quitclaim Deed were valid and the Property was transferred to the Trust in 2002, Ms. Carolus herself was the trustee at that time. Thus, Ms. Carolus had authority to grant the security interest to Lakeview's predecessor in interest in 2003 either because the Quitclaim Deed was invalid or because she was the trustee of

the Trust.  Lakeview's security interest is therefore valid, and it is entitled to quiet title against Plaintiff.

Lakeview also argues that it is entitled to default judgment on its counterclaim for equitable and contractual subrogation.  Given that Lakeview is entitled to default judgment on its counterclaim to quiet title, the Court need not reach these issues.

### ii.      <u>Declaratory Judgment</u>

In its Counterclaim, Lakeview also seeks a declaratory judgment that it is the holder of the 2003 Note and beneficiary of the 2003 Deed of Trust as well as mortgagee authorized to enforce the power of sale through foreclosure of the Property.  A party may obtain a declaratory judgment where a real controversy between the parties will be actually determined by the judicial declaration sought.  *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015) (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).  "Declaratory-judgment actions are intended to determine the rights of parties when a controversy has arisen, before any wrong has actually been committed, and are preventative in nature."  *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 88 (Tex. App.—Austin 2004, pet. denied) (internal quotation marks omitted).

In the instant case, Plaintiff alleges it owns the Property free and clear of Lakeview's valid lien.  The evidence is clear that Ms. Carolus granted Lakeview a security interest in the Property as part of the 2003 refinance and that Ms. Carolus had legal authority to do so.  Accordingly, Lakeview is entitled to a declaratory judgment that it has a valid lien on the Property.

The evidence further establishes that the amount owed on the Property as of June 29, 2023, was $65,735.67 at 6.0%.  (Payoff Quote [#28-2], at 30.)  The summary judgment evidence shows the Note is in Default as payments are due for March 2020 through August 2023.  (*Id.*)

Accordingly, Lakeview is entitled to a declaratory judgment that the Note is valid; that Lakeview's security interest in the Property is valid; that the amount owed on the Note as of June 29, 2023, is $65,735.67; that the Note is in default; and that Lakeview is entitled to foreclose on the Property under its contractual remedies.

### iii.   <u>Non-Judicial Foreclosure</u>

Lakeview seeks an order to enforce its contractual lien through non-judicial foreclosure pursuant to the terms of the 2003 Deed of Trust.  Lakeview is also entitled to default judgment on this claim.

Under Texas law, a party asserting a claim for foreclosure must show: (1) a financial obligation and the lien securing it; (2) default on the loan; and (3) that the property subject to foreclosure is the same as that subject to the lien.  *Maldonado v. CitiMortgage, Inc.*, 676 Fed. App'x 282, 284 (5th Cir. 2017).  The facts as deemed admitted and the evidence attached to Lakeview's motion establish the existence of the Note and Deed of Trust encumbering the Property.  The admitted facts and evidence also establish that the Note is in default; payments are due for March 1, 2020; and the Note has been accelerated and the amount due is $65,735.67 as of June 29, 2023 at 6.0% interest.  Lakeview is therefore entitled to a judgment for non-judicial foreclosure.

### iv.   <u>Writ of Possession</u>

Finally, Lakeview seeks a writ of possession against any occupant in possession of the Property.  A writ of possession is "a form of process employed to enforce a judgment to recover

the possession of land by commanding the sheriff to enter on the land and give possession of it to the person entitled under the judgment." *Ditech Fin., L.L.C. v. Naumann*, 742 Fed. App'x 810, 815 (5th Cir. 2018) (quotations omitted).  Under Texas Rule of Civil Procedure 310, which governs the foreclosure process in this diversity action, "a party seeking to foreclose on a property is entitled to a writ of possession once the court renders a judgment of foreclosure." *Bank of New York Mellon Tr. Co., Nat'l Ass'n v. Millard*, No. A-15-CA-01035-SS, 2017 WL 3446033, at *4 (W.D. Tex. Aug. 10, 2017) (quotations omitted).  Because Lakeview is entitled to a judgment for foreclosure, it is also entitled to a writ of possession.

### IV.  Motion for Summary Judgment on Plaintiff's Claims

Lakeview is also entitled to summary judgment on Plaintiff's claims.  Again, Plaintiff's Amended Complaint seeks a declaratory judgment that the 2003 Deed of Trust is not valid and enforceable against the Property and to quiet title in Plaintiff's favor on the basis that Lakeview does not have a valid security interest in the Property.

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion" and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at

323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court views the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

Plaintiff has not filed a response in opposition to Lakeview's motion, and the time to do so has expired. *See* W.D. Tex. Loc. R. CV-7(d).  According to this Court's Local Rules, the Court may therefore construe Lakeview's motion as unopposed. *Id.*  Because Plaintiff has not provided the Court with any evidence to support its claims, there is no genuine dispute of material fact and Lakeview is entitled to summary judgment.  Additionally, based on the findings in Lakeview's favor with respect to the motion for default judgment, Plaintiff cannot prevail on his claims.

There is no evidence before the Court that Ms. Carolus's 2002 Quitclaim Deed was valid, as it purported to transfer the Property to an individual trustee who was not designated as trustee in the Trust documents.  Plaintiff has not provided the Court with any facts or evidence establishing that this transfer was valid or substantiating the allegation that Ms. Shive was a valid

trustee.  Plaintiff's entire theory of his case is legally meritless.  And, as previously stated, if the Quitclaim Deed somehow validly transferred the Property to the Trust, Plaintiff still could not prevail.  Ms. Carolus was the trustee at the time of the 2003 refinance, and therefore had authority to grant Lakeview's predecessor in interest a security interest in the Property. Lakeview is therefore entitled to summary judgment on Plaintiff's claims.

## V.  Attorney's Fees

Lakeview requests attorney's fees in the amount of $2,015.00.  In support of this request, Lakeview provides the Court with an affidavit by Lakeview's counsel, Michael Weems. (Weems Aff. [#28-8], at 1–3.)  The affidavit reflects that he billed his time at $325.00 per hour and expended 6.2 hours from the time Lakeview was substituted into the suit as Defendant through the filing of the motion for default and summary judgment.

Lakeview does not provide the Court with any argument or authority for the legal basis of its request for fees.  Insofar as Lakeview is requesting fees under the Texas or Federal Declaratory Judgment Act, this Court cannot award fees.  The Texas Declaratory Judgment Act is solely a procedural mechanism, and this Court is bound to apply federal procedural law in this diversity action.  *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir.1998) (quoting *Housing Authority v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied)).  Accordingly, Lakeview may not rely on the Texas Declaratory Judgment Act to authorize an award of attorney's fees in this case.  *Id.*

Nor does the federal Declaratory Judgment Act provide a basis for fees.  The federal Declaratory Judgment Act "does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under [substantive] state law in a diversity action." *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988).

The only substantive state law claims Lakeview asserts are a claim to quiet title and for non-judicial foreclosure.  Attorney's fees are not available in an action to quiet title. *Callan v. Deutsche Bank Tr. Co. Americas*, 11 F. Supp. 3d 761, 771–72 (S.D. Tex. 2014), amended, 93 F. Supp. 3d 725 (S.D. Tex. 2015) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293–94 (Tex. App.— Texarkana 1991, writ denied)).  However, the Fifth Circuit has characterized foreclosure as a "contractual remedy."  *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 994–95 (5th Cir. 2019).  If the mortgage agreement contains a provision regarding attorneys' fees, that could be a legal basis for awarding Lakeview fees.  Also, under Texas law, the prevailing party in a breach of contract case can recover attorneys' fees.  Tex. Civ. Prac. & Rem. Code § 38.001.  It is unclear whether Lakeview is invoking either of these legal bases—or a different basis—for its attorneys' fees request.

Because Lakeview has not yet articulated a valid legal basis for awarding it attorneys' fees, its request for attorney fees in this case should be denied at this time.  If Lakeview provides the Court with a valid legal basis for awarding it fees during the objection period, the requested fees should be awarded because they are reasonable.

### VI.  Conclusion and Recommendation

Having considered Lakeview's motion, the lack of response from Plaintiff, the pleadings, the summary judgment evidence, and the governing law, the undersigned **recommends** that Defendant's Motion for Default Judgment and Summary Judgment [#28] be **GRANTED** and a judgment entered as proposed by Lakeview in Document #28-1 except that the request for attorney's fees should be denied.

16

### VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

     SIGNED this 15th day of March, 2024.

_____

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE