# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| CECIL KENTON CAROLUS, TRUSTEE OF THE BERTHA A CAROLUS REVOCABLE LIVING TRUST AND HEIRS OF BERTHA CAROLUS; *Plaintiff and Counter-Defendant* § § § § § § | |
| vs. § | Case No. SA-22-CV-01234-XR |
| § LAKEVIEW LOAN SERVICING, LLC, § *Defendant and Counter-Plaintiff* § | |

## ORDER ON REPORT AND RECOMMENDATION

On this date the Court considered United States Magistrate Judge Elizabeth S. Chestney's Report and Recommendation in the above-numbered and styled case, filed March 15, 2024 (ECF No. 33), addressing Defendant's motion for summary judgment and motion for default judgment (ECF No. 28). After careful consideration, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's recommendations.

### BACKGROUND

Plaintiff Cecil Kenton Carolus ("Mr. Carolus") filed this action in his capacity as the heir of Bertha A. Carolus ("Ms. Carolus") and Trustee of the Bertha A. Carolus Revocable Living Trust ("BAC Trust"). *See* ECF No. 1-4.

Mr. Carolus initially sued James B. Nutter ("JBN") in state court on October 31, 2022, asserting a single claim for wrongful foreclosure and seeking to prevent the foreclosure sale of the real property located at 4900 Timber Trace in San Antonio, Texas (the "Property") scheduled for the following day. *Id.* The state court issued an *ex parte* temporary restraining order enjoining the foreclosure sale. *See* ECF No. 1-5.

JBN timely removed the case to this Court in November 2022 based on diversity jurisdiction. ECF No. 1. Following removal, Plaintiff filed an amended complaint (ECF No. 18) and JBN filed an answer and counterclaim (ECF No. 19), which remain the parties' live pleadings in this case. On August 4, 2023, this Court substituted Lakeview as the defendant in this case following a notification from JBN that it had transferred its interest in the lien and Property to Lakeview. ECF No. 25.

Together, the operative pleadings establish that Ms. Carolus bought the Property in October 1999 with funds obtained through a purchase-money loan ("1999 Loan") in the amount of $70,961.00, secured by a deed of trust ("1999 DOT") in favor of Union Planters Bank, N.A. ECF No. 19 ¶¶ 15, 16. In May 2001, Ms. Carolus refinanced the 1999 Loan and executed a deed of trust ("2001 DOT") in favor of JBN to secure a new loan ("2001 Loan") in the amount of $70,056.00. *Id.* ¶ 17.

In October 2002, Ms. Carolus created the BAC Trust, naming herself as trustee ("BAC Trustee") until incapacitation or death. ECF No. 18 ¶¶ 6–7. The Trust Agreement specified the following succession of Trustees: (1) Ms. Carolus; (2) Mr. Carolus, as first successor; (3) Melanie A. Carolus, as second successor; and (4) a person chosen by majority vote of the Trust beneficiaries. ECF No. 19-5 at 17.

Two weeks later, Ms. Carolus purportedly transferred the Property to Jane A. Shive, as BAC Trustee, by quitclaim deed, even though Ms. Shive was not then nor ever designated as the BAC Trustee under the Trust Agreement. ECF No. 28 ¶¶ 18, 21; *see also* ECF No. 28-4 (Quitclaim Deed).[1]

---

[1] Mr. Carolus does not assert anywhere in the amended complaint that, by transferring the Property to Ms. Shive, Ms. Carolus sought to revoke the Trust in part or in whole. Indeed, the transfer the Property to Ms. Shive in her alleged capacity *as the BAC Trustee* confirms that the BAC Trust remained intact at the time of the alleged transfer. The Trust Agreement, however, provided that Ms. Carolus would remain the BAC Trustee until her incapacitation or death.

In July 2003, despite having purportedly transferred the Property to Ms. Shive as Trustee eight months earlier, Ms. Carolus refinanced the 2001 Loan and executed a deed of trust ("2003 DOT"), granting a lien on the Property in favor of JBN to secure a $68,918.00 loan ("2003 Loan"), which was used to pay the balance of the 2001 Loan. ECF No. 18 ¶ 8. At the time of the 2003 Loan, Ms. Carolus executed an affidavit stating:

> That she is the owners [sic] in fee simple of the land and all the improvements situated thereon. That there are no outstanding agreements, contracts or instruments entered into by herself with any other persons which would affect the title to the [Property] and which are not of record.

*See* ECF No. 19-10. Within the 2003 DOT, Ms. Carolus expressly acknowledged and agreed that the beneficiary of the 2003 DOT was subrogated to the rights, powers, and equities of the beneficiary of the 2001 DOT. ECF No. 19-7 at 9–10. Ms. Carolus further acknowledged that the 2003 Loan was given in renewal, extension and rearrangement of the 2001 Loan. *Id.* Following the origination of the 2003 Loan, JBN and Lakeview advanced funds for the payment of ad valorem taxes to protect their interest in the Property. ECF No. 19 ¶ 26.

When Ms. Carolus died in 2018, her son, Mr. Carolus, became the Trustee. *Id.* ¶ 9. No probate estate was established because all her property had been transferred to the Trust. *Id.* After Ms. Carolus's death, payments on the 2003 Loan ceased. On August 17, 2021, JBN sent a notice of default to Ms. Carolus's estate. *Id.* ¶ 27. The Trust failed to cure the default, and a foreclosure sale was scheduled for November 1, 2022. ECF No. 18 ¶ 28.

In his amended complaint, Mr. Carolus asserts two causes of action: (1) a claim for quiet title and (2) a claim for declaratory judgment. ECF No. 18. First, Mr. Carolus alleges the 2003 DOT is a cloud on the Trust's title to the Property because it erroneously named Ms. Carolus as the grantor under the 2003 DOT, even though the Property was owned by the Trust. *Id.* ¶¶ 10–12.

Accordingly, Mr. Carolus further seeks a declaratory judgment that the 2003 DOT is invalid and unenforceable. *Id.* ¶¶ 13–15.

Lakeview's counterclaim asserts six causes of action relating to the 2003 Loan and 2003 Deed of Trust, including a claim to quiet title (Claim I), claims for contractual and equitable subrogation (Claims II & III), and claims seeking (a) declaratory judgment that Lakeview is authorized to enforce the power of sale in the 2003 DOT (Claim IV), (b) nonjudicial foreclosure (Claim V), and (c) a writ of possession (Claim VI). ECF No. 19 ¶¶ 28–42.

Mr. Carolus failed to timely answer or otherwise respond to the counterclaims, and the Clerk entered default against him on August 21, 2023. ECF No. 27. Lakeview subsequently moved for summary judgment as to Mr. Carolus's claims and for default judgment as to its counterclaims. ECF No. 28. After the deadline to respond to the motion had expired without a response from Mr. Carolus, the Court referred the motion to Magistrate Judge Chestney under Rule 72. *See* Text Order (Jan. 18, 2024).

On March 15, 2024, Magistrate Judge Chestney entered a report and recommendation, recommending that the Court grant all relief requested in Lakeview's motions other than its request for attorneys' fees. ECF No. 33.

## SUMMARY OF REPORT AND RECOMMENDATION

**I.     Lakeview's Motion for Default Judgment**

    **A.     Legal Standard**

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

Although the Court must accept the movant's well-pleaded facts as true, entry of default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller *et al.*, Fed. Prac. & Proc. Civ. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus, prior to a default judgment, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

### B.     Analysis

Mr. Carolus, by his default, has admitted to Lakeview's well-pleaded allegations of fact in Lakeview's counterclaim "and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

#### 1.     Lakeview's Claim to Quiet Title (Claim I)

Lakeview seeks to equitably quiet title in the Property by removing any clouds on its lien by virtue of any claims made by Plaintiff and seeks a judgment declaring the Property is subject to the 2003 Deed of Trust.

A suit to quiet title is an equitable action in which the plaintiff seeks to remove from his title a cloud created by an allegedly invalid claim. *Florey v. Estate of McConnell*, 212 S.W.3d 439, 448 (Tex. App.—Austin 2006, pet. denied). A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof. *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). "In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

To state a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)).

By failing to answer the counterclaim, Mr. Carolus has admitted that (1) Ms. Carolus refinanced the 2001 Loan and executed the 2003 DOT granting Lakeview (via JBN) a security interest in the Property for the 2003 Loan, ECF No. 19 ¶ 22, and (2) Ms. Carolus was both trustor and trustee of the BAC Trust at the time of the 2003 refinancing and had the authority to encumber the Property as a trust asset, *id.* ¶ 29.

6

By filing the instant suit seeking to strip Lakeview's interest in the Property, Mr. Carolus has asserted a claim to the Property that is adverse to Defendant's interest, which constitutes a cloud on Lakeview's title.

The theory underlying Plaintiff's claim is that the 2003 DOT was invalid because Ms. Carolus did not personally own the Property when she granted a security interest in it; rather, the Trust owned the Property. Further, Mr. Carolus argues the 2003 DOT was invalid because Ms. Carolus had transferred the Property to Ms. Shive, as BAC Trustee.

As Lakeview points out, there is no evidence that Ms. Shive was ever designated as the BAC Trustee under the Trust Agreement—indeed, Ms. Shive is not even named in the succession of Trustees. Thus, the quitclaim deed purporting to transfer the Property to Ms. Shive was either (1) invalid—because Ms. Shive was not the BAC Trustee at the time of the transfer—or (2) had the simple effect of transferring the Property to the BAC Trust. Because Ms. Carolus was the BAC Trustee in 2003, she had the power under the Trust Agreement to "mortgag[e] or pledg[e] or otherwise encumber[] any part or all of the Trust assets." ECF No. 19-5 § 4.03(l). In short, Ms. Carolus had authority to grant the security interest in the Property to Lakeview's predecessor in 2003 either because the quitclaim deed was invalid or because she was the trustee of the Trust. Thus, upon her execution of the 2003 DOT, Lakeview (via JBN) acquired a valid secured interest in the Property.

Accordingly, the Magistrate Judge concluded that the 2003 Loan and 2003 DOT are encumbrances on the Property. ECF No. 33 at 11. Given that Lakeview is entitled to default judgment on its counterclaim to quiet title, the Magistrate Judge concluded that the Court need not reach Lakeview's counterclaims regarding equitable and contractual subrogation.

### 2.     Claim for Declaratory Judgment (Claim IV)

In its Counterclaim, Lakeview also seeks a declaratory judgment that the Defendant is a mortgagee as that term is defined under TEX. PROP. CODE § 51.0001(4) and is authorized to enforce the power of sale in the 2003 DOT through foreclosure of the Property because the 2003 Loan is in default. A party may obtain a declaratory judgment where a real controversy between the parties will be actually determined by the judicial declaration sought. *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015).

The Magistrate Judge recommends granting Lakeview's claim for declaratory judgment that Lakeview is the holder of the 2003 DOT and the mortgagee authorized to enforce the power of sale through foreclosure of the Property. ECF No. 33 at 11–12. As discussed above, Mr. Carolus has, by his default, admitted that Ms. Carolus granted a valid security interest in the Property to Lakeview, as JBN's successor, as part of the 2003 Loan refinancing. He has further admitted that the 2003 Loan is in default for failure to make timely payments and that a Notice of Default was provided to Ms. Carolus's estate in August 2021. *See* ECF No. 19 ¶ 27; ECF No. 19-11 (Notice of Default).  The Magistrate Judge further cited summary judgment evidence attached to Lakeview's motion indicating that the 2003 Loan is in default with payments due for March 2020 through August 2023, and that, as of June 29, 2023, the BAC Trust owes $65,735.67, with an interest rate of 6.0%. ECF No. 33 at 12 (citing ECF No. 28-2 at 30).

Thus, the Magistrate Judge concluded that Lakeview is entitled to a declaratory judgment that (1) the 2003 Loan is valid; (2) Lakeview's security interest in the Property is valid; (3) the amount owed on the 2003 Loan as of June 29, 2023, is $65,735.67; (4) the 2003 Loan is in default; and (5) Defendant has a right to foreclose on the Property under its contractual remedies. ECF No. 33 at 12.

### 3. Claim for Non-Judicial Foreclosure (Claim V)

Lakeview seeks an order to enforce its contractual lien through nonjudicial foreclosure under the 2003 DOT.

In Texas, a party asserting a claim for foreclosure must show: (1) a financial obligation and the lien securing it; (2) default on the loan; and (3) that the property subject to foreclosure is the same as that subject to the lien. *Maldonado v. CitiMortgage, Inc.*, 676 F. App'x 282, 284 (5th Cir. 2017).

The Magistrate Judge further concluded that Lakeview was entitled to enforce its lien through nonjudicial foreclosure under the 2003 DOT, reasoning that:

> The facts as deemed admitted and the evidence attached to Lakeview's motion establish the existence of the Note and Deed of Trust encumbering the Property. The admitted facts and evidence also establish that the Note is in default; payments are due for March 1, 2020; and the Note has been accelerated and the amount due is $65,735.67 as of June 29, 2023 at 6.0% interest.

ECF No. 33 at 12.

### 4. Claim for Writ of Possession (Claim VI)

Lakeview seeks a writ of possession against any occupant in possession of the Property.

A writ of possession is "a form of process employed to enforce a judgment to recover the possession of land by commanding the sheriff to enter on the land and give possession of it to the person entitled under the judgment." *Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 815 (5th Cir. 2018) (quotations omitted). Under Texas Rule of Civil Procedure 310, which governs the foreclosure process in this diversity action, "a party seeking to foreclose on a property is entitled to a writ of possession once the court renders a judgment of foreclosure." *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Millard*, No. A-15-CA-01035-SS, 2017 WL 3446033, at *4 (W.D. Tex. Aug. 10, 2017) (quotations omitted).

The Magistrate Judge concluded that, based on its right to pursue nonjudicial foreclosure, Lakeview is also entitled to a writ of possession. ECF No. 33 at 12–13.

## II.     Request for Attorneys' Fees

Lakeview requests attorney's fees in the amount of $2,015.00. In support of this request, Lakeview provides the Court with an affidavit by Lakeview's counsel, Michael Weems. ECF No. 28-8 at 1–3. The affidavit reflects that he billed his time at $325.00 per hour and spent 6.2 hours from the time Lakeview was substituted into the suit as Defendant through the filing of the motion for default and summary judgment.

The Magistrate Judge recommended denying Lakeview's request for attorneys' fees because it had not stated a clear legal basis for an award of fees, noting that fee awards are unavailable under the Texas and Federal Declaratory Judgment Acts ("DJA") or in actions to quiet title. ECF No. 33 at 15–16 (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (noting that the Texas DJA is only a procedural mechanism and that the Federal DJA does not by itself provide statutory authority to award attorneys' fees that would not otherwise be available under state law in a diversity action). Noting that the Fifth Circuit has characterized foreclosure as a "contractual remedy," however, the Magistrate Judge observed that "[i]f the mortgage agreement contains a provision regarding attorneys' fees, that could be a legal basis for awarding Lakeview fees." ECF No. 33 at 16 (citing *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 994–95 (5th Cir. 2019)).

## DISCUSSION

### I.     Legal Standard

Any party who desires to object to a Magistrate Judge's findings and recommendations must serve and file his or her written objections within fourteen days after being served with a

copy of the findings and recommendations. 28 U.S.C. § 636(b)(1). The Magistrate Judge's recommendation issued on March 15, 2024. ECF No. 33. No objections have been filed.

Because no party has objected to the Magistrate Judge's Report and Recommendation, the Court need not conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

**II.     Analysis**

    **A.     Lakeview's Motion for Default Judgment**

The Court has reviewed the Report and Recommendation and finds it to be neither clearly erroneous nor contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation as to Lakeview's motion for default judgment.

With respect to Lakeview's counterclaim for declaratory judgment, the Court observes that Lakeview's answer and counterclaim, filed in February 2023, sought only declarations that "[Lakeview] is the holder of the 2003 Note and beneficiary of the 2003 DOT" and that, "as holder of the 2003 Note and beneficiary of the 2003 DOT, [Lakeview] is a mortgagee as that term is defined under Tex. Prop. Code § 51.0001(4) and is authorized to enforce the power of sale in the 2003 DOT through foreclosure of the Property[.]" ECF No. 19 ¶¶ 38, 39; *see also id.* ¶¶ 45(d)–(e).

Nowhere in the counterclaim does Lakeview assert seek a declaration that the BAC Trust owes $65,735.67 on the Property, at an interest rate of 6.0%. *See generally* ECF No. 19. In fact, in connection with its claims for equitable and contractual subrogation, Lakeview sought judgments that it was owed $68,918.00 (the payoff amount to discharge the 2001 DOT) and $48,394.41 (representing funds advanced to pay ad valorem taxes plus interest), with annual interest accruing

11

from at a rate of 7.5% from the date of disbursement. *See id.* ¶¶ 31–37. In total, Lakeview asserted counterclaims for between $168,697.41 and $217,091.82 as of February 6, 2023. *Id.*

Nonetheless, the Court observes that both the principal and interest rate requested in Lakeview's motion for default judgment are less than the amounts Lakeview sought in connection with its counterclaims for subrogation.[2] Moreover, the 2003 Note, which is attached to Lakeview's counterclaim, provides for an annual interest rate of 6.0%, *see* ECF No. 19-8 at 1, and Mr. Carolus failed to object to the $65,735.67 total specified in Lakeview's motion. Thus, although Lakeview did not explicitly request a declaration as to the total amount of its lien on the Property, such relief is warranted here, in the interest of clarity and efficiency.

### B.    Lakeview's Motion for Summary Judgment

In light of the Court's adoption of the Magistrate Judge's recommendation as to Lakeview's motion for default judgment, Mr. Carolus is deemed to have admitted that the 2003 DOT and Lakeview's interest in the Property are valid. Together with the documentary evidence Lakeview has offered in support of its motions, Mr. Carolus's admissions defeat his claims to quiet title and for declaratory judgment on behalf of the BAC Trust. Thus, no reasonable jury could return a verdict for Mr. Carolus, and summary judgment in favor of Lakeview is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation that Lakeview's motion for summary judgment be granted.

---

[2] Although Lakeview's request for declaratory judgment does not constitute an award of damages, the typical parameters for analyzing damages awarded in a default judgment are instructive here. Such damages "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Usually, non-liquidated damages are proven at a hearing, but a hearing is unnecessary where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is not necessary. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### C. Lakeview's Request for Attorneys' Fees

Addressing Lakeview's request for attorneys' fees, the Magistrate Judge observed that "[i]f the mortgage agreement contains a provision regarding attorneys' fees, that could be a legal basis for awarding Lakeview fees." ECF No. 33 at 16; *see also id.* (citing TEX. CIV. PRAC. & REM. CODE § 38.001) (noting that, under Texas law, the prevailing party in a breach of contract case can recover attorneys' fees).

In its counterclaim, however, Lakeview specifically requested fees "pursuant to the 2003 DOT and Tex. Civ. Prac. & Rem. Code §§ 37.009, 38.001." ECF No. 19 ¶ 44. Section 18 of the 2003 DOT provides that "Lender shall be entitled to collect all expenses incurred in pursuing [foreclosure remedies], including but not limited to reasonable attorneys' fees and costs of title evidence." ECF No. 19-7 at 5.

The Court concludes that the 2003 DOT provides a legal basis for a fee award and that the requested fees of $2,015.00 are reasonable. Accordingly, the Court will grant Lakeview's request to recover the attorneys' fees it has incurred in litigating this case.

### CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's recommendations.

Lakeview's motion for summary judgment and for default judgment (ECF No. 28) is **GRANTED** in all respects, including its request for attorneys' fees.

A final judgment pursuant to Rule 58 will follow. Lakeview is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the entry of the Judgment. *See* Local Rule 54.

It is so **ORDERED**.

**SIGNED** this 24th day of April, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE